*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARLOS JEFFREY ANDERSON,

        Defendant-Appellant.

UNPUBLISHED
October 21, 2024
12:15 PM

No. 368098
Wayne Circuit Court
LC No. 21-006365-01-FC

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for two counts of second-degree murder, MCL 750.317; one count of assault with intent to commit murder (AWIM), MCL 750.83; and three counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

This case arises out of a shooting on April 5, 2021, which resulted in the deaths of Richard Boyd and Tayone Boyd, and injuries to Wallace Cranford. Riquia Boyd—Richard's daughter and Tayone's sister—dated defendant and was pregnant with their child at the time of the shooting. The couple had broken up a few weeks prior and Riquia was in the process of moving out of the house they lived in together. Riquia testified that, on the day of the shooting, she went to the house to move out some belongings, and woke defendant up in the process. According to Riquia, the couple argued over the TV and, after tussling over it, she went to the kitchen, grabbed a knife, and threw it at the wall. Riquia testified that defendant pushed her out of the house, and that she tried, unsuccessfully, to reenter the house by kicking down the side door and by going through an already broken window that was covered in plastic. Riquia testified that when she was unable to reenter the house, she called Richard.

Cranford testified that, on the morning of the shooting, he was driving past Richard's house when Richard flagged him down and asked him for a ride to defendant's and Riquia's house. Cranford testified that when they arrived, he remained in his car while Richard approached the house. According to Cranford, Richard calmly approached the porch where Riquia and defendant were arguing and diffused the argument. Riquia also testified that Richard's demeanor was calm.

Cranford testified that Tayone then arrived at the house and began to walk "kind of fast" to the porch, but that he did not run and that he had a "regular" demeanor. Riquia testified that Tayone acted aggressively and that she pulled him back three times and said, "Wait, that's my baby's daddy." Both Riquia and Cranford testified that no one made any threats and that there was no physical altercation with defendant. Riquia also testified that Tayone did not appear to have any weapons on him. Cranford testified that, as soon as Tayone touched the porch, defendant, who was standing in the threshold of the front door, pulled out an assault rifle and shot Tayone and then Richard. Cranford testified that defendant then began shooting at Cranford's car, so he put the car in reverse and attempted to drive away, eventually crashing into the front porch of another house. Cranford testified that he knew defendant was shooting at him because defendant pointed the gun "right at [him]." Cranford was shot in his side and lost a kidney as a result.

Defendant did not testify at trial but video footage of an interview police officers conducted with defendant was played for the jury. Defendant told police that Riquia arrived at the house with a knife, cut him with it during their tussle, and never threw it away during their argument. According to defendant, when Riquia called Richard, she told him to "come and get" defendant. Defendant stated that, when Richard arrived, he tried to speak to defendant calmly but defendant could hear the "rowdiness" in his voice, and, at one point, Richard attempted to push past defendant to enter the house. Defendant told police that Tayone approached him aggressively and that Richard began to approach him at the same time. According to defendant, Tayone reached into his back pocket to grab something and was "right in [defendant's] face" when defendant began shooting. Defendant maintained that he never shot at Cranford's car. He told police that he never intended to shoot at Cranford's car and guessed that Cranford may have been shot by stray bullets.

The jury also heard testimony from the medical examiner and forensic pathologist who conducted Richard's and Tayone's autopsies, respectively. Both testified that they did not observe any indicators of close-range gunshots.

The jury found defendant not guilty of first-degree murder, MCL 750.316, as to Richard and Tayone, but guilty of the lesser included offense of second-degree murder for both counts. They also found defendant guilty of AWIM as to Cranford, and guilty of three counts of felony-firearm. Defendant now appeals, challenging the sufficiency of the evidence of his convictions for second-degree murder and AWIM.

On appeal, a claim of insufficient evidence is reviewed de novo in the light most favorable to the prosecution. *People v Lowrey*, 342 Mich App 99, 122; 993 NW2d 62 (2022). This Court must "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). In making this determination, "this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *Id*. Due to the difficulty of proving a defendant's knowledge or intent, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Defendant argues that there was insufficient evidence to support his second-degree murder convictions for the shootings of Richard and Tayone because the prosecution failed to prove, beyond a reasonable doubt, that he was not acting in self-defense. We disagree.

To prove the elements of second-degree murder, a prosecutor must show: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Gash*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365693) (quotation marks and citation omitted); slip op at 3. At common law, self-defense can justify homicide "if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (quotation marks and citation omitted). Self-defense is also codified by MCL 780.972, and the relevant provisions state:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

"Once a defendant injects the issue of self-defense into the trial and satisfies the initial burden of producing some supporting evidence, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 9.

On appeal, defendant contends that the prosecution failed to prove beyond a reasonable doubt that he lacked a self-defense justification for killing Richard and Tayone. He maintains that he honestly and reasonably believed he was in danger of death or serious injury when Richard and Tayone arrived at his house to confront him. Defendant points to Riquia's testimony that Tayone acted aggressively when he arrived at the house. But Riquia also testified that Tayone did not make any threats or engage in any physical altercation and that he did not appear to have a weapon. And Cranford testified that Tayone had a "regular" demeanor. Defendant also points to his statement that Tayone reached into his back pocket just before defendant shot him. But no other testimony corroborated defendant's statement and the jury was entitled to disregard that testimony as not credible. *Bennett*, 290 Mich App at 472. Similarly, defendant told police that Tayone was "right in [his] face" at the time of the shooting, but the forensic evidence and testimony discredited defendant's account. And, according to Cranford, defendant began shooting at Tayone as soon as he touched the porch.

With regard to Richard, both Riquia and Cranford testified that he was calm throughout and Cranford testified that he diffused the argument between Riquia and defendant. Defendant made statements in the interrogation video which, to some extent, contradicted this testimony, but as discussed, the jury was entitled to find defendant's account not credible and to give greater weight to Riquia's and Cranford's testimony as well as to the forensic evidence, which indicated that Richard was not shot at close range. *Bennett*, 290 Mich App at 472.

This evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that defendant did not honestly and reasonably believe that his life was in imminent danger or that he under threat of serious bodily injury, such that the use of deadly force was necessary. And this Court must defer to the jury's credibility determinations and decisions regarding how to weigh the evidence presented. *Bennett*, 290 Mich App at 472. Accordingly, there was sufficient evidence for the jury to conclude beyond a reasonable doubt that defendant lacked a self-defense justification.

Defendant also argues that there was insufficient evidence to support his AWIM conviction because the prosecution failed to prove that he had the specific intent to kill Cranford during the shooting. We disagree.

The elements of AWIM are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). AWIM is a specific intent crime. *Id*. Accordingly, to satisfy the second element, a prosecutor must prove that the defendant had the specific intent to kill. *Id*. at 148.

On appeal, defendant contends that the prosecution failed to prove beyond a reasonable doubt that he had the specific intent to kill Cranford because the shooting was an accident. He maintains that he never intended to shoot Cranford, nor did he know how many shots he fired.

As above, there was enough evidence presented at trial for a rational trier of fact to find, beyond a reasonable doubt, that defendant had the specific intent to kill Cranford. Cranford testified that defendant first shot Tayone, then Richard, then him. He saw defendant point the gun "right at [him]." Even as Cranford reversed the car to drive away, defendant continued to shoot at the car. Although defendant denied that he intended to shoot Cranford during his interrogation, the jury had the opportunity to consider this evidence in light of Cranford's testimony. "Witness credibility is a matter for the jury to decide," *People v Hieu Van Hoang*, 328 Mich App 45, 68; 935 NW2d 396 (2019), and this Court is required to defer to the jury's credibility determinations, *Bennett*, 290 Mich App at 472.

Accordingly, the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to find beyond a reasonable doubt that defendant had the requisite intent to kill Cranford.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani

-4-